WATSON, Judge.
Elwood Dugas, plaintiff, sued the Coca Cola Bottling Company, defendant, (later identified correctly as Coca Cola Bottling Company of Lake Charles, Inc.), contending that a coca cola bottle had exploded in his hand and the bottling company was responsible for his damages. From a judgment of the trial court in favor of Dugas for $10,-131, the bottling company has appealed, urging that the trial court erred in finding as a fact that Dugas was not in the process of opening the bottle with a plumber’s basin wrench at the time of the accident and erred in applying the doctrine of res ipsa loquitur to cast defendant.
On November 26, 1973, at approximately 2:30 in the afternoon, Dugas, a plumber and part-time musician, was present at Boo Boo’s, a lounge or nightclub located between Lafayette and Breaux Bridge. Du-gas was supervising plumbing work in connection with the remodeling of Boo Boo’s. The part-owner, J. V. Boulet, asked Dugas to fetch some cokes from a case in the storage area. Dugas did so and, since there was no bottle opener handy, he took his plumber’s basin wrench in hand to open the bottles.
The plumber’s basin wrench, which is in evidence, is a device used to tighten or loosen nuts or fittings which are in inaccessible areas. It consists of a long, slender steel rod with a claw-like wrench device on one end and a steel rod which serves as a *1056 handle on the other end. The claw, which is half circular in shape with teeth on the inside, is movable so it can be positioned to operate when the wrench is turned either clockwise or counter-clockwise.
Dugas had two cokes. He placed one between his legs and attempted to open the other with the basin wrench.
The trial court held, as a matter of fact, that Dugas had not begun to open the coke bottle when it broke or exploded, causing a cut to his left index finger and left little finger. Due to his injury, Dugas lost about 10 weeks of work and also lost, according to his testimony, his ability to play the guitar professionally. Fortunately, after the accident, he took and passed the test to become a master plumber licensed by the city of Lafayette, and he has returned to work as a plumber.
At trial, plaintiff presented himself and three witnesses who were present at Boo Boo’s when the accident happened. The defendant called only one witness, an expert in the field of physics who gave testimony concerning the breaking of bottles. In rebuttal, plaintiff questioned the driver of the coca cola truck which serviced Boo Boo’s Lounge.
After hearing the witnesses, the trial court concluded that:
“Plaintiff’s witnesses indicated that he had not yet actually begun opening the bottle when it exploded.” (TR. 93).
The trial judge added:
“Plaintiff presented several witnesses who testified to the fact that he did not mishandle the bottle. This evidence establishes that before the plaintiff actually started opening the bottle it exploded.” (TR. 93).
On these factual findings, the trial court concluded that plaintiff had established he did not mishandle the coke bottle, and this showing, together with the bottle’s explosion, makes defendant negligent as a matter of law. In effect, the theory of res ipsa loquitur was applied.
There are two issues for review on appeal: (1) whether the trial judge erred manifestly in finding that plaintiff established he had not begun opening the bottle of coca cola when it broke or exploded; and (2) whether the doctrine of res ipsa loquitur is applicable to this case.
A careful study of the record indicates that the witnesses called by plaintiff did not testify that Dugas had not begun opening the bottle when it broke. There were only three witnesses in addition to the plaintiff.
The plaintiff was candid about it; he testified:
“Q. Do you know if you had actually begun to open it?
“A. I don’t think so. I couldn’t swear to that. I don’t think so, no; as far as I can recall.” (TR. 120)
and later on cross-examination:
“Q. It would be fair to say, then, that you don’t know, really, the position of the wrench, with respect to the bottle cap, at the time the breakage occurred?
“A. Well, in approximately that position. Whether the teeth were on the cap, or not, that I can’t remember.
“Q. And you don’t know how much pressure you may or may not have been exerting on the wrench, and on the bottle, at the time the bottle broke?
“A. No, I have no way of knowing.” (TR. 134).
Plaintiff’s first witness, Valerie June Boulet, said, when asked how Mr. Dugas was injured:
“It was in the process of him opening a coke bottle, with this wrench. He had one coke in between — just about at his knees, and the other one in his hands. And he was in the process of opening it, and it was this — this sound, that caught my attention. And when I looked up, he had — er—the coke and the blood, was both — they both were just gushing out, you know.” (TR. 143).
Rene Prejean, second of plaintiff’s witnesses, testified as follows:
“Q. Do you know how the accident happened; or what happened?
*1057 “A. Er — I saw Mr. Dugas trying to open a coke bottle with a lavatory wrench; a basin wrench.
***** *
“Q. Do you know whether or not he had the wrench on the bottle, at the time that the accident happened?
“A. No, sir, I don’t.
“Q. Do you know if he had attempted to open it, when it happened?
“A. Er — I imagine he was in the process.” (TR. 161).
In addition to Rene Prejean’s testimony in court, the plaintiff[1] introduced Prejean’s deposition, which is more detailed and more positive concerning the accident. In part, Prejean’s deposition reads as follows:
“Q. Were you present when Elwood was hurt?
“A. Yes, sir, I was.
“Q. What happened?
“A. He was in the process of opening a coke bottle with a lavatory wrench. ******
“Q. How was he using it? Do you know? How was he using it to open the bottle?
“A. Well, I think he was holding the bottle in either his right — I don’t remember what hand he was holding the bottle in, but he had the wrench on top and I would imagine he was trying to pull the cap off.
“Q. Had he touched the bottle when it broke? Had he touched it with the wrench when it broke?
“A. I believe he had, yes.
“Q. In other words, it broke while he was in the act of pulling the cap off?
“A. Right.
“Q. The best you can recall is that he had the looped end of the wrench which is this top part here, hooked over the cap and he was pulling on it?
“A. To me that’s how it was done, yes. It happened real quick, you know, I was just looking at him one minute and the next minute he was full of blood.” (TR. 65-66).
The final witness for plaintiff was Irene Nero whose testimony, under questioning by counsel for plaintiff, went as follows:
“Q. He was using this? And what was he doing with the wrench?
“A. Trying to open a bottle of coke.” (TR. 171).
She added, when asked:
“Q. Did you know whether or not he had actually attached the wrench to the bottle, at the time of the accident?
“A. Well, the only thing I can remember seeing, was that that little hook, was on top of the bottle.
“Q. Do you know whether or not he had actually attached it to the bottle, and attempted to open it?
“A. No, not that I know of, sir.
“Q. You don’t know?
“A. No.” (TR. 172).
Considerable argument has centered around the answer of Mrs. Nero which read, “No, not that I know of, sir.”, which has been interpreted to mean that she stated that she knew he had not begun to open the bottle. Her answer to the following question, which is usually overlooked, indicates that she really did not know whether he had begun to open the bottle. The question was simply “You don’t know?” and she replied “No”.
Therefore, far from establishing that Du-gas had not begun opening the bottle when it broke or exploded, the testimony of all of the three witnesses who were present when the accident occurred is to the effect that Dugas was in the process of opening the bottle when it broke.
The factual conclusion of the trial judge to the contrary is manifestly erroneous. There is no reasonable evidentiary basis to support the- factual finding that Dugas had not undertaken to open the bottle when it broke. To hold that the trial judge’s conclusion must be accepted under *1058 the manifest error rule would be to overlook the testimony of the witnesses and would misapply the manifest error rule. See Canter v. Koehring Company, 283 So.2d 716 (La., 1973) and Wiley v. Travelers Insurance Company, 300 So.2d 555 (La.App. 3 Cir. 1974) writ denied La., 303 So.2d 187.
There is no issue of credibility here; there is no inference of fact to be drawn from the testimony of these witnesses. When the witnesses testify uniformly as to what occurred and when the trial judge misunderstands or misconstrues their testimony there is manifest error and the finding must be reversed on appeal.
The next question is the legal effect of manifest error as to the facts. One who undertakes to open a bottle of coca cola with a basin wrench, breaking the bottle in the process, is negligent. He is negligent even though he may have opened other similar bottles with a basin wrench on prior occasions. Even though it is possible to open a coca cola bottle with a basin wrench according to the expert witness, Dr. James Riley, a professor of physics at Drury College, this witness also testified that, if the shaft of the wrench is placed incorrectly or slips inadvertently only a half inch or so, the claw of the wrench grasps the entire top of the bottle instead of the cap and breaks the bottle without removing the cap. This testimony is consistent with the fact that, according to the witnesses Nero and Boulet, the cap was still on the bottle following plaintiff’s accident. The fact that the cap was still on the bottle is a strong indication that the accident occurred from the wrench twisting the top off the bottle rather than lifting the cap.
Under the circumstances described, the doctrine of res ipsa loquitur is not applicable. This doctrine would obtain only if plaintiff had established that he had not mishandled the bottle. Here, the most plausible and, indeed, the inescapable inference as to the cause of plaintiff’s accident is his own negligence and not that of the bottler. Where the inference of plaintiff’s negligence is just as strong as that of defendant’s, the doctrine of res ipsa loquitur does not apply. Taylor v. CNA Insurance Group, 300 So.2d 479 (La., 1974). A fortiori, where the inference of plaintiff’s negligence is stronger, res ipsa loquitur is inapplicable.
Therefore, for the reasons assigned, the judgment of the trial court is reversed and plaintiff’s claims are dismissed at his costs, both on trial and appeal.
REVERSED AND RENDERED.
DOMENGEAUX, J., dissents and assigns reasons.
FORET, J., dissents for reasons assigned by DOMENGEAUX, J.

. There is no issue of inconsistency between the deposition and Prejean’s testimony in court; the former supplements and amplifies the latter.