CARTER, Judge.
Plaintiff appeals from an adverse judgment dismissing his suit for personal injuries incurred as a result of electrical shock he received while employed as a carpenter at the construction site of the Prospect Street Bridge over the Intracoastal Waterway in Houma, Louisiana.
On appeal, plaintiff contends that the trial court erred in finding that plaintiff was contributorily negligent, in failing to find that the executive officers of Fremin-Smith Services, Inc. breached their duty to provide plaintiff with a safe work place, and in not addressing the issue of damages.
We have reviewed the entire record, including the trial judge’s written reasons, a copy of which is attached hereto as Appendix A, and conclude that the factual findings and conclusions of law made by the trial judge are not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Therefore, we affirm the judgment of the trial court at plaintiffs costs.
AFFIRMED.
APPENDIX A
32ND JUDICIAL DISTRICT COURT PARISH OF TERREBONNE STATE OF LOUISIANA No. 50676
REASONS FOR JUDGMENT
This matter was tried on its merits 24th through 27th days of January, 1983;
PRESENT WERE:
Lester Arcard Esco, the plaintiff, and his attorney, Michael H. Ellis, Esquire, of *787 the firm of Murray, Murray, Ellis, Bra-den and Landry;
Henry Smith, Freeman Smith, Aubrey G. “Bill” Bass, J. Michael Dixon and C. Randall Dixon, defendants and executive officers and/or employees of plaintiff's employer, Fremin-Smith Services, Inc., and their attorney, Wood Brown, III, Esquire, of the firm of Montgomery, Barnett, Brown and Read;
State of Louisiana, Department of Transportation and Development, defendant, and its attorney, Robert J. Jones, Esquire;
Louisiana Power and Light Company, defendant, and its attorney, J. Wayne Anderson, Esquire; and United States Fire Insurance Company, defendant and intervenor, previously erroneously referred to in pleadings as Crum and Forster Insurance Company, and its attorney, Wood Brown, III, Esquire.
Prior to trial, other defendants, Universal Iron Works, D. and G. Rentals and Sales, Inc., Luby Guidry d/b/a Houma Shipbuilders, Inc., and Houma Shipbuilders, Inc., were dismissed from this litigation. After trial, and on their respective motions, the State of Louisiana and Louisiana Power and Light were also dismissed from this case.
The fact situation involved herein is neither complex nor unusual. The case arises out of an incident which occurred on May 28, 1976 on the site of construction of the Prospect Street Bridge over the Intraeoas-tal Waterway. Plaintiff was an employee of Fremin-Smith Services, Inc., which company was insured by United States Fire Insurance Company. Defendants, Henry Smith, J. Michael Dixon and C. Randall Dixon were executive officers of or held supervisory positions with Fremin-Smith Services, Inc. The central event involved occurred while a crane, or cherry-picker, was being utilized to move a tool-filled barrel from one point to another at the job site. The crane operator was Aubrey G. “Bill” Bass. Plaintiff and another employee of Fremin-Smith, Edward “Junior” Brockington, held the barrel, or lines attached to it, while the crane picked it up and moved it.
Overhead, was a high voltage electrical transmission line owned by Louisiana Power and Light. The line remained energized during the entire sequence of events as, apparently, no request was made to L.P. & L. to de-energize these lines.
The events which transpired are not seriously in dispute. Bass sat in the cab of the crane and operated the controls. Plaintiff and Brockington were outside, holding the load and were, in fact, touching it or lines attached to it during the activity. Although the title of “signalman” was not formally bestowed upon him, the court finds that plaintiff was in fact functioning as the signalman during the operation. The signalman is charged with directing the operation and observing the progress of the load from point to point. It is his responsibility to, as is implied by the name, “signal” the operator of the crane as to his movements of the boom and, ultimately, the load held by the crane. The operator, due to a covering over the cab, is not in a position to observe the upper reaches of the crane and Mr. Bass was not able to observe the upper most reaches of the crane during the operation in question herein.
At some point during the movement of the load, the highest end of the crane came into contact with the electrical transmission line. Power surged through the entire unit. Brockington was knocked away, dazed but not injured, and Bass was not affected because the cab is insulated. Plaintiff suffered a severe electrical shock, burns, and other injuries for which he seeks recovery herein. '
The case arose prior to the adoption of comparitive negligence and, as such, requires a consideration of the existence of contributory negligence, assumption of the risk, or victim fault on the part of the plaintiff. While it is sometimes considered more legally correct to ascertain primary negligence first, the court feels that the proper legal result herein will naturally *788 flow from this consideration being made initially.
“Working near electrical power lines is neither contributory negligence per se nor assumption of the risk.” Hebert v. Gulf State Utilities Company, 426 So.2d 111 (La.1983). As cited in Hebert, the question is enunciated in Dyson v. Gulf Modular Corporation, 338 So.2d 1385 at 1390 (La.1976) which asks whether, “the party’s conduct conform(ed) to the standard of care that would be exercised by a reasonable man; or did the conduct breach a duty imposed upon the party to protect against the particular risk from which the accident resulted?”
In Williams v. New Orleans Public Service Inc., 421 So.2d 278 (La.App. 4th Cir.1982), plaintiff was killed while installing, with the help of neighbors, a C.B. antenna in his backyard in close proximity to a NOPSI high voltage feeder line. The court there found the plaintiffs to be barred from recovery as a result of what was termed “their own fault no matter how that fault is measured, i.e., contributory negligence or assumption of the risk”, id. at 280-281. The question of Civil Code Article 2317 strict liability was also considered therein.
The nature of extent of victim fault that is sufficient to overcome strict liability, has evolved in a dynamic process in recent jurisprudence. See, Loescher v. Parr, 324 So.2d 441 (La.1975); and Dorry V. LaFleur, 399 So.2d 559 (La.1981). Essentially, the court in Dorry contrasts actual from constructive knowledge of a hazard in determining whether a plaintiff’s actions were reasonable within the context of a given set of facts.
Dorry limits assumption of the risk to cases where the plaintiff had actual knowledge of a hazard in which 2317 strict liability is imposed. Stated therein, “there are some risks that every man must be held to appreciate... There is a plain difference, however, between what one must have known (a finding of actual knowledge) and what one should have known (the imposition of an objective standard of care).” (Emphasis by the court).
The court, in Williams, cites the often used language in Cates v. Beaurregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976):
“Electric wires on a pole are an announcement of danger to almost anyone smart enough and old enough to get himself in contact with a wire 28 feet above the ground.”
In that case, a 16 year old climbed a power pole and cut a wire, incorrectly and unfortunately assuming that it was not live. This conduct was held to bar his right to recovery.
In Dyson v. Gulf Modular Corporation, supra, an accident similar to the instant case, resulted in the death of the plaintiff. The question of greatest importance therein was whether the boom of the crane touched the high power line or whether the electricity “arced” from the line to the crane which was in close proximity. In that case, Dyson simply held a line from the crane taut while another employee was attempting to attach a bridle connected to the line to a piece of equipment which was to be moved by the crane. Dyson did not exercise any control over the movement of the crane and was only directly concerned, at the time of the accident, with the connection of the line to the equipment. Here, Esco was actually directing, as signalman, the movement of the crane itself and the court finds that factor a distinguishing point between this case and Dyson.
In Tirante v. Gulf States Utilities Company, 412 So.2d 128 (La.App. 1st Cir.1982) writ denied, 414 So.2d 389 (1982), there was no witness to plaintiff’s accident, and the plaintiff himself could supply no factual recollection of the events. Plaintiff’s neck came into contact with the high power line when he, apparently, stood up on a pipe on top of a cooling tower where he was servicing a valve. The trial court granted a directed verdict having found that such strong proof of contributory negligence and victim fault was established, that reasonable men could not arrive at a verdict in favor of plaintiff. The appellate court, con *789 struing the evidence in a light most favorable to plaintiff, found that the evidence did not justify such a conclusion.
Essentially, Tirante had to have been standing on the pipe on top of the tower to have raised his neck (in light of his 5'10" height) to a level of 6'4V4", the level of the electrical line. Although warned of the danger, Tirante’s knowledge at the time of that danger was tempered by his understanding that he had to stand on the pipe to service the valve. He operated under the assumption that there was no other place he could stand to accomplish his job related task. Although there was a walkway of some sort on top of the tower, or other surface which could apparently have been safely used as a standing point to service the valve, Tirante was not aware of its existence or potential use. The court, reasoning that in the light of the knowledge he held he took the only available route known to him for the completion of his job mandated task, that his proximity to the line was not voluntary or unnecessary. In essence, this failed to meet the standard of a voluntary and unnecessary exposure to a known danger sufficient to be considered assumption of the risk in bar to a right of recovery in a strict liability situation.
A similar necessity faced the plaintiff in Hebert v. Gulf States Utilities Company, supra. This most recent pronouncement of our Supreme Court involves a factual activity quite different from that of Lester Esco. There, plaintiff attempted to manipulate, from an unsteady perch atop a girder, a long and unwieldy metal angle iron. He had to work in what proved to be close quarters, and once he commenced the movement of the iron, he was unable to control its movement sufficiently to prevent contact with the wire. Significantly, there had been an incident without injury four days earlier and power company investigators had viewed the scene and were fully aware of potential future danger over the remainder of the project. The court took great pain to describe in detail, at page 113, the tricky nature of the maneuver and gives there the distinct impression that once the operation began, and without any fault on the part of Hebert, the movement of the metal bar in any direction was possible insofar as result was concerned.
Essentially, Hebert had no choice but to do what he was doing, and once his activity began there was an even chance that he would come in contact with the electrical line. Unfortunately, this lack of options on his part apparently removed his activities from the ambit of assumption of the risk in the opinion of the Supreme Court.
In the case at bar, the court finds none of these factors present. At all times, Lester Esco was in a position to avoid the accident by the exercise of only the slightest degree of care. He, as well as all others on the job site, was aware of the existence of the lines, and as stated by the court in Cates, their very presence must have signaled danger to him. This court can assume that Esco had actual knowledge of the danger. Esco exercised a certain degree of control over the situation that is significantly absent from all those cases cited herein wherein assumption of the risk or victim fault was not found to be present. To paraphrase the 4th Circuit in Williams, supra, no matter what it is called, there is victim fault here sufficient to bar plaintiffs right to recover and a judgment in accordance with these reasons is rendered separately.
Houma, Louisiana, this 21st day of April, 1983.
/s/ Ashby W. Pettigrew, Jr. ASHBY W. PETTIGREW, JR., JUDGE