468 So.2d 1169 (1985)
Lester Arcard ESCO
v.
Henry SMITH, Fremin Smith, William Bass, Randy Dixon, State of Louisiana Through the Department of Highways, Universal Iron Works, Inc., D & G Rentals and Sales, Inc., Lubie Guidry D/B/A Houma Shipbuilders, Inc., Houma Shipbuilders, Inc., Louisiana Power and Light Company, et al.
No. 84-C-1930.
Supreme Court of Louisiana.
Rehearing Denied June 13, 1985.
May 14, 1985.
*1171 Julian R. Murray, Jr., Murray, Murray, Braden & Gonzales, Michael Ellis, New Orleans, for plaintiff-applicant.
J. Wayne Anderson, Monroe & Lemann, New Orleans, John King, La. Dept. of Highways, Robert Jones, Doran & Kivett, Baton Rouge, Wood Brown, III., Montgomery, Barnett, Brown & Read, Ronald A. Johnson, Michael L. McAlpine, Johnson & McAlpine, New Orleans, for defendant-respondent.
CALOGERO, Justice.
Plaintiff Lester Arcard Esco, a carpenter, suffered personal injuries by electrocution when a cherry picker[1] operated by his foreman struck an overhead live electrical transmission line. He sued, among others, four supervisory employees of the company for which he worked, or at least co-employees assertedly insureds under a liability policy issued to his employer Fremin-Smith Services, Inc. by defendant United States Fire Insurance Company.[2] The trial judge rendered judgment in favor of the four named defendants after taking the case under advisement,[3] and dismissed plaintiff's suit with prejudice upon finding that there was "victim fault here sufficient to bar plaintiff's right to recovery." He found it unnecessary to decide whether each or all of the four named defendants were individually negligent.
The Court of Appeal affirmed the trial court in a brief opinion which attached as an appendix the trial judge's written reasons. 457 So.2d 786.
We granted writs to review plaintiff/relator's contention that the decisions below were clearly wrong, that the record does not support the conclusion that plaintiff "was in fact functioning as a signalman during the operation," nor that as signalman *1172 he was actually "directing the movement of crane itself" when the crane came in contact with the live electrical line. 461 So.2d 322.
Plaintiff's employer, Fremin-Smith Services, Inc. was engaged in setting footing forms on the substructure for the Prospect Street bridge over the Intracoastal Waterway in Houma, Louisiana under a sub-contract with Gurtler-Hebert Construction Company, which had contracted with the State of Louisiana, Department of Highways. On the date of the accident the four named defendants were employees of Fremin-Smith Services. Henry Smith was the president; J. Michael Dixon was vice-president in charge of civil construction; Michael's brother, C. Randall Dixon, was the on site job superintendent; and Aubrey "Bill" Bass, essentially an experienced carpenter, was variously described as assistant superintendent, and foreman. He was working with plaintiff and one Junior Brockington at the time of the accident.
The electric transmission lines were energized because no one had asked LP & L to de-energize them.
Randy Dixon, who admitted at trial that it was his responsibility to make the work site safe, including checking out the power lines in the vicinity, and having them de-energized if necessary, relied in large measure upon Bass, his experienced subordinate and assistant job superintendent, to see that the job ran smoothly. The cherry-picker, leased by Fremin-Smith from a sister company, was in use at the job site. Bass was the operator of the cherry-picker; Junior Brockington and plaintiff Esco were carpenters who were assisting Bass. The first chore for the crew, early on the morning of May 28, 1976, was to move a fifty-five gallon drum filled with bolts from its resting place to another location on the job site.
Defendants Smith and Michael Dixon conceded that applicable OSHA regulations required that a crane not be operated within ten feet of an energized electrical transmission line. The regulations further provide that a person should be designated to observe the clearance of equipment and give a warning where it is difficult for an operator to maintain the desired clearance. Bass admitted that he had never in his experience designated a signal man, that carpenters or other workmen usually performed the functions as required, and he specifically admitted that on the morning in question he did not instruct either Brockington or Esco that they were to serve in that capacity. While Randy Dixon acknowledged that he was generally aware that there were live electrical wires that had not been de-energized, Bass testified that he had seen the line and assumed that it was not live.
Bass assumed control of the crane from inside the cab, the roof of which obscured his vision as regards the overhead lines. Plaintiff Esco attached a cable from the crane to the fifty-five gallon drum, called for a tightening of the cable and steadied the drum as the crane lifted, then moved it.
When the drum had been moved about thirty feet the crane came in contact with the electrical transmission line. Brockington was knocked away dazed but uninjured. Esco suffered severe electrical shock, burns and other injuries for which he seeks recovery in this lawsuit.
Needless to say deference should be given the factual determination of the district court. Canter v. Koehring, 283 So.2d 716 (La.1973). Nonetheless the constitutional scope of review of this court in civil cases extends to both law and facts. La. Const. art. V, § 5(C).
In this case there is no reasonable evidentiary basis to support the trial court's factual finding that plaintiff was a signalman charged with responsibility for observing clearance during movement of the crane. When witnesses testify uniformly as to what occurred and when the trial judge misunderstands or misconstrues their testimony there is clear error and the finding should ordinarily be reversed on appeal. Dugas v. Coca Cola Bottling Co., 356 So.2d 1054 (La.App. 3rd Cir.1978), writ denied, 357 So.2d 806 (La.1978).
*1173 Having determined that the fundamental premise upon which the trial court relied in denying plaintiff recovery was a misconstruction of evidence concerning whether or not plaintiff was signaling movement of the crane, it is incumbent upon us to make the determination whether plaintiff was contributorily negligent, unassisted by the conclusion of the trial court.
Henry Smith, president of Fremin-Smith testified at trial that part of the responsibility of the job superintendent and assistant superintendant is to appoint a signalman to assist the crane operator, especially when the crane is being operated near power lines. "Bill" Bass, the crane operator and assistant superintendant testified that he appointed neither the plaintiff nor "Junior" Brockington nor anyone else to be signalman. Furthermore, he did not recall anyone giving him any signals concerning movement of the crane prior to the crane's striking the power line. Plaintiff at trial testified that normally when a cherry picker was being operated, there was a signalman; he was not that signalman, he testified. The testimony is clear that there was no appointed signalman.
Counsel for the defendant argues, and apparently the trial judge was influenced thereby, that plaintiff in deposition prior to trial had admitted that he was a signalman. Therein lies the fundamental error in this case. Plaintiff's interrogation at deposition went like this:
Q. Who was acting as the signalman or flagman?
A. All I did at that time was tell him to tighten up, Bill, and I was balancing it.
Q. Were you acting as the signalman or was Mr. Brockington acting as the signalman?
A. I was. Brockington was standing on the side, and I was just letting him know to tighten up, and Brockington was telling him how high to go and what else, I guess.
Q. Do you know if anyone was watching out for the overhead power line at the time you were doing this work with the barrel?
A. I really don't know.
Q. You don't know one way or another if someone was watching out for the power line?
A. I really don't know.
Even though plaintiff responded that he, rather than Brockington, was acting as signalman, his description of his duties in that very response makes it clear that he was leaving it up to Brockington to "signal" the crane operator on "how high" to go "and what else." Defendant relies strongly upon plaintiff's admission that he was the one who ordered the cables tightened on the drum. Indeed he did call for a tightening of the cable on the drum. But that does not establish that plaintiff was a signalman charged with signalling movement of the crane. Throughout his testimony, plaintiff consistently testified that he had to constantly watch the drum which he was handling, to keep it from swinging and hitting him, and that he relied on Brockington to relay to the crane operator when to tighten the cable. Plaintiff testified he was not looking up at the time of the accident and did not see the crane hit the line. All of the evidence indicates that plaintiff's duties involved handling a heavy load on the ground. His attention was directed to that task.
As can be noted from the discussion hereinabove, plaintiff admitted that after securing the lines to the drum he gave an instruction (to Bass, or to Brockington for transmission to Bassit is not entirely clear which) to have the crane tighten the line around the drum. This is the only signal or instruction plaintiff gave to anyone, and it does not constitute instruction or signal to the crane operator that he may safely move the crane. Even if we assume it was an acceptable and customary procedure, that is, Bass's suggestion that normally a member of the work crew, without direction, takes it upon himself to be a signalman (and this is contrary to Dixon's testimony), it is evident here that plaintiff did not do so, and that if anyone had the *1174 opportunity to act as the signalman it was Brockington, rather than the plaintiff, who was occupied with handling the drum.
Given these facts we must determine if plaintiff acted negligently, such that his conduct would bar his recovery. Contributory negligence is never presumed, but must be proved as any other fact by a preponderance of the evidence. Tirante v. Gulf States Utilities Co., 412 So.2d 128 (La.App. 1st Cir.1982), writ denied 414 So.2d 389 (La.1982).
It is well established that when a person is in the presence of a known danger, to find him contributorily negligent, it must be shown that he voluntarily and unnecessarily exposed himself to that danger. Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445 (1955).
Working near electrical power lines is neither contributory negligence per se nor assumption of risk. Likewise, the fact that a person's own actions bring him in contact with high voltage lines (a fact not evident in this case, incidentally) does not necessarily make him negligent. Hebert v. Gulf States Utilities, Co., 426 So.2d 111 (La.1983). The question, as enunciated in Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976) is whether "the party's conduct conform(ed) to the standard of care that would be exercised by a reasonable man; or did the conduct breach a duty imposed upon the party to protect against the particular risk from which the accident resulted?" In other words, did plaintiff act unreasonably? We find that he did not.
In assessing negligence and contributory negligence in a particular case, we do not necessarily require identical conduct of the plaintiff and the defendant. "Varying factors affect what the standard of the reasonable man requires. For example, the defendant may have had more information than the plaintiff concerning the risk involved ..." Hall v. Hartford Accident and Indemnity Co., 278 So.2d 795 (La.App. 4th Cir.), writ denied, 281 So.2d 753 (La. 1973). Hebert v. Gulf States Utilities Co., supra and cases cited therein.
No attempt was made by plaintiff's supervisors to minimize the dangers of electrocution, not by verbal warnings, nor by having the power cut off, nor by seeing that their equipment had the proper safety devices attached. A workman's superior cannot create or permit danger and send the workman into it and escape liability on a theory that the workman was contributorily negligent by exposing himself to the danger. Chaney v. Brupbacher, 242 So.2d 627, 631 (La.App. 4th Cir.1970).
The fact that plaintiff was aware of the danger of working around electrical power lines and was in fact injured, does not preclude his recovery. As stated in Hall v. Hartford Accident and Indemnity Co., 278 So.2d 795, 799 (La.App. 4th Cir.), writ denied, 281 So.2d 753 (La.1973):
When the party charged with the responsibility of observing safety factors fails to do so, it is grossly unjust to place the blame for a resulting accident on the person who poured the last cup of water before the defective dam broke, unless that person also exercised a substantial amount of knowledgeable control over the dangerous situation. There was no such knowledge or control by plaintiff in the present case.
We find that plaintiff Esco was neither contributorily negligent, nor chargeable with assumption of risk.
Having so found we now address the contention by relator that one or more of the four named defendants was in fact negligent, and that such negligence caused this accident.
Plaintiff contends that Henry Smith, president of Fremin-Smith Services, Inc., J. Michael Dixon, vice-president in charge of civil construction, C. Randall Dixon, on-site job superintendent, and Bill Bass, assistant job superintendent, were each negligent, and that their negligence caused the accident.
It is the obligation of an employer and, within the limits of their authority, of *1175 its supervisory personnel, towards workmen, to provide them with a working place and conditions which are reasonably safe considering the nature of the work. Chaney v. Brupbacher, supra at 631.
In Canter v. Koehring Company, 283 So.2d 716, 721 (La.1973), this Court articulated the following criteria for imposing liability on individual executive officers:
"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
"2. This duty is delegated by the principal or employer to the defendant.
"3. The defendant officer, agent, or employee has breached his duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm."
In order for a corporate officer to be held liable for purported personal fault or negligence which arises out of a breach of duty, that person must have some personal contact with and responsibility towards the injured employee. Raley v. Carter, 401 So.2d 1006 (La.App. 1st Cir. 1981). If the officer has delegated his duty to competent subordinates, he is not personally liable unless he knew or should have known of the failure of the subordinates to perform and he failed to remedy the risks resulting from the nonperformance. Hadrick v. Diaz, 302 So.2d 345 (La. App. 1st Cir.1974).
We dispose of Henry Smith's purported negligence merely by noting that such duty as Smith may have owed plaintiff had been delegated to and assumed by Michael Dixon and/or Randy Dixon, and there is no showing that this delegation was without due care, or not to a responsible subordinate. Trial testimony shows that Smith seldom visited job sites and he was not personally aware of the existence of the power lines or of any failure on the part of his subordinates to perform a duty owed plaintiff. Under these circumstances, Smith cannot be held personally liable to plaintiff.
Michael Dixon, as manager of the project, would provide guidance to the on site job superintendent. He had been to the job site only three or four times prior to the accident and was unaware of the presence of the power line. Michael was in charge of putting together a company safety manual but relied on the job superintendents and the company safety man to visit the site, enforce the safety regulations and inform him of any violations. Any duty Michael Dixon owed the plaintiff had been delegated to the job superintendent, Randy Dixon, and there is no showing that this delegation was without due care, or not to a responsible subordinate. Michael Dixon cannot be held to be personally liable to plaintiff.
*1176 Randy Dixon, the job superintendent was in charge of the day to day job operations. This included implementing the safety policies among his men as well as conducting weekly safety meetings. It was his responsibility to check out the overhead power lines in the job site vicinity. He was aware the wire was "hot" and had even had discussions about cutting off the power, but had failed to notify LP & L to do so. He did not recall discussing the power lines at the safety meetings, nor did he remember telling people to watch out for them. He failed to adequately instruct Bass, the crane operator, on the safe operation of the crane near the energized power lines. Randy Dixon had a personal duty to instruct the plaintiff and other men on the job in proper, safe work techniques as well as a personal responsibility to inspect for and eliminate any unsafe conditions. Randy Dixon owed a duty to plaintiff, which he breached. He is personally liable to plaintiff.
Bill Bass, assistant superintendent, also conducted safety meetings and generally ran the job in Randy Dixon's absence. He was negligent in operating the crane within ten feet of the power line, without taking the proper precautions, when his own view of the line was obstructed, and in striking the electrical line with the cherry picker. He was also negligent as the deputized assistant superintendent in failing to designate a signalman prior to the commencement of the operation. Bass is personally liable to the plaintiff.[4]
For the foregoing reasons we find that Aubrey "Bill" Bass and C. Randall Dixon each owed a duty to plaintiff; each violated that duty by their negligent conduct; and that their negligence caused plaintiff's injury. Accordingly plaintiff is entitled to judgment in his favor against Dixon, Bass and their liability insurer, United States Fire Insurance Company.[5] Inasmuch as the amount of damage to which he is entitled has not yet been addressed, the case is remanded to the Court of Appeal for consideration of the damage to which plaintiff is entitled and for entry of judgment in accordance with law.

Decree
The judgments of the district court and the Court of Appeal are reversed. The case is remanded to the Court of Appeal for a determination of the damages to which plaintiff is entitled and for entry of the judgment consistent with that determination and in accordance with the views expressed herein.
REVERSED; REMANDED.
NOTES
[1] This cherry picker was in fact a fifteen ton telescoping boom type of crane.
[2] The accident occurred on May 28, 1976. R.S. 23:1032, was amended effective October 1, 1976, to bar tort claims against co-employees except when liability arises from an intentional act.
[3] Other defendants were Universal Iron Works, D & G Rental and Sales, Inc., Lubie Guidry d/b/a Houma Shipbuilders, Inc., Houma Shipbuilders, Inc., named defendants who were dismissed from the litigation prior to trial, and State of Louisiana and Louisiana Power and Light Company, defendants who were dismissed on motion for directed verdict at the close of plaintiff's case.
[4] Although Bass was at times in plaintiff's testimony referred to as a foreman, both Smith, the president, and Michael Dixon, the vice-president of the company, testified that he was an assistant superintendent. Bass was responsible for running the job in Randy Dixon's absence. This included the authority to hire and fire employees. Therefore, we find Bass was engaged in part in a supervisory capacity in connection with this job.
[5] Nowhere in this record or in the briefs filed by the parties is there any suggestion that Dixon and Bass, or either, is not an insured under the policy issued by United States Fire to Fremin-Smith. (The policy was introduced and does form part of the record.) In fact counsel for defendants admitted during the trial that the liability limit under the policy is $300,000.00 per accident, and he at least impliedly concedes that Bass, as well as Randy Dixon, are personally insured under the policy.