KLIEBERT, Judge.
In December 1979 James Schouest, plaintiff, sued four supervisors of his former employer, J. Ray McDermott, in tort alleging their negligence and/or intentional negligent actions caused him to contract silicosis and other complications resulting from silicosis. Plaintiff was a sandblaster/painter almost exclusively for J. Ray McDer-mott from 1964 to 1979. Named defendants are the following supervisory employees of McDermott: Bruce Stipelcovich, Division Manager; Herman Quick, General Superintendent; Fred Mabry, Fabrication Superintendent, and Larry Williams, Safety Director. J. Ray McDermott intervened for compensation and medical benefits paid or payable to plaintiff. The trial court dismissed plaintiff’s tort suit. Plaintiff and McDermott[1] perfected this devolutive appeal.
In his reasons for judgment the trial judge said that plaintiff alleged the defendants were intentionally negligent as concerns his safety: (1) by supplying inadequate safety hoods for sandblasting work such as he was doing, and (2) for failing to notify him timely of his lung condition, *575 to-wit, silicosis. He then found defendants provided up-to-date, state-of-the-art equipment and, as such, did not commit any intentional tort. Further, he found that at best the delay in notifying plaintiff of his condition was three months and therefore immaterial. The trial judge also concluded from the testimony of the physicians “that there is serious doubt as to any disability caused by the silicosis itself.”
On appeal, plaintiff contends the trial court erred in failing to apply ordinary negligence standards to the acts of defendants occurring prior to 1976 and in failing to find the same acts rose to that of an intentional tort after 1976. Further, plaintiff contends the court erred in ruling he did not present sufficient evidence to prove he had in fact contracted silicosis.[2] We are asked to reverse the trial court’s finding of non-liability and to assess a reasonable amount of damages for plaintiff as well as penalties and attorney fees against J. Ray McDermott. Although we agree the standard for determining liability before 1976 is ordinary negligence and after 1976 intentional acts of negligence, for the reasons which follow we affirm the trial court.
Prior to 1976, the worker’s compensation statute, LSA-R.S. 23:1032, permitted tort suits by employees against executive officers of their employers even where only ordinary negligence was alleged. After 1976 amendments to section 1032, executive officers could only be sued by fellow injured employees for intentional acts of negligence. Therefore, two standards for liability are applicable when attempting to hold an executive officer liable for injuries to a worker; i.e., ordinary negligence prior to 1976 and intentional acts of negligence after 1976. Herbert Schouest v. Stipelcovich, et al.,[3] 490 So.2d 294 (La.App. 5th Cir.1986), writ denied, 495 So.2d 304 (La.1986).
In the case before us, Larry Williams and Bruce Stipelcovich assumed their supervisory duties in 1976 (at the same time as the effective date of the amendment of section 1032) and 1977 respectively. Therefore, any liability attributable to them must be for an intentional act of negligence. Herman Quick and William Mabry were supervisors prior to 1976 and therefore may be liable to plaintiff for negligent acts of ommission or commission occurring during that time. After 1976, any of the four defendants may be held liable only if they either desired to bring about the physical result of their action or believed the results were substantially certain to follow from what they did. Bazley v. Tortorich, 397 So.2d 475 (La.1981). Further, because Stipelcovich delegated safety functions to competent subordinates, he had no personal duty to the workers and is absolved of liability. See Schouest v. Stipelcovich, supra.
Prior to 1976, of the four defendants, only Quick and Mabry were supervisors of plaintiff. Each was in the yard daily and had sufficient personal contact and responsibility toward plaintiff to be held liable if they negligently failed to provide plaintiff a work place and conditions that were reasonably safe considering the nature of the work. See Esco v. Smith, 468 So.2d 1169 (La.1985); Canter v. Koehring, 283 So.2d 716 (La.1973).
Plaintiff is 46 years old and illiterate, except for the ability to sign his name. From 1964 until January 1979 plaintiff had worked as a sandblaster/painter, except that between December 1970 and February 1972, for approximately a year, he worked as a tack welder for Avondale. Initially, he sandblasted for Ike Haggard Company until Haggard was purchased by J. Ray McDermott in 1967. He worked for McDermott from 1967 until December 1970 when his employment was terminated. He was reemployed by McDermott in February 1972 and continued working for McDer-mott until late January 1979. (There is *576 some dispute as to whether he stopped sandblasting in November 1978 or in January 1979).
Initially, canvas hoods were used to protect workers while sandblasting. Subsequently, air-fed hoods were used, but there is some dispute here as to whether plaintiff was furnished the air-fed hoods just before or just after McDermott purchased Haggard. There is some indication McDermott recommended using respirators under the hoods.
With either hood there was some infiltration. To minimize the amount of infiltration, workers used Spalonze (a waterproofing agent) to patch leaks, and duct tape to protect the permanent lens of the hoods by holding an extra lens over the permanent lens, in lieu of a curved lens suggested by suppliers. There is also some testimony indicating that duct tape was also used to patch leaks in the hoods.
Unfortunately the hoods were not perfect, allowing sand to infiltrate the hood and ultimately into the workers’ lungs. Although not originally considered so, sandblasting is now known to be inherently dangerous. Inhaling dust with high concentrations of silica can lead to disability due to fibrous in the lungs.
At the time of trial, based on a previous finding of partial disability due to his inability to continue sandblasting, [Schouest v. McDermott, 411 So.2d 1042 (La.1982)], plaintiff was receiving monthly workman’s compensation benefits. To that time weekly compensation benefits paid totaled $70,-429.70. Additionally, medical expenses of $10,641.58 had been paid on plaintiff’s behalf.
Here, as in the trial court, plaintiff urges liability of the defendants' for two reasons: (1) failure to furnish a safe place to work, and (2) negligently monitoring his medical condition and failure to remove him from a silica environment once they knew of his condition.
The evidence shows once the inherent danger of sandblasting was known, McDer-mott, through its safety department, undertook the monitoring of the worker’s health conditions by periodic medical examinations at the Westside Surgical Clinic (subsequently Nelson and Logan Clinic).
From the time of his pre-employment physical in 1964 through his last medical examination before plaintiff's employment was terminated in December 1970, his chest x-ray reports were normal. Upon his reemployment in February 1972, a medical examination and safety briefing were done. The pre-employment medical report stated plaintiff’s chest x-ray was normal and contained no work restrictions. However, by letter dated March 24, 1972, Dr. Howard Nelson, an associate of Dr. Logan at the Westside Clinic, informed McDermott plaintiff’s lungs showed early pneumoconiosis[4] but with no change shown in x-ray film since 1970. By interoffice memo dated April 12, 1972, the record shows Jim Carroll,[5] safety director, informed plaintiff of this finding, explained its significance as well as the necessity of using respiratory equipment provided, and scheduled him for biannual examinations. The interoffice communication is attached hereto as Appendix I.
The next exam, performed on October 9, 1972, was reported to be abnormal and plaintiff was immediately referred to a pulmonary specialist, Dr. Morton Ziskind, for further testing. However, Dr. Ziskind examined plaintiff, found him normal, and returned him to unrestricted work. Thereafter, biannual exams continued through 1976. Although some medical examination *577 reports in the record show abnormal chest x-rays, indicative of some problem, each report states plaintiff could perform unrestricted work.
Therefore, prior to 1976 we find no breach of duty by any supervisory personnel toward plaintiff in monitoring his medical condition or in providing a reasonably safe work place, considering the nature of the work. Further, we find this case is distinguishable on its facts from the case, Herbert Schouest v. Stipelcovich, et al., supra, previously reviewed in this Court.
After 1976, to hold any defendant liable their acts must have risen to that of an intentional tort. The evidence indicates Quick, Mabry, and Williams performed their duties in a competent manner. Plaintiff’s medical exams continued on a biannual basis, and for the most part indicated no progress in plaintiffs slight pneumoconio-sis problem and that he did not need employment restrictions until 1978. Upon receipt of the November 20, 1978 report showing abnormal findings, plaintiff was immediately referred for further pulmonary testing. When it was recommended plaintiff be removed from sandblasting and placed in a relatively dust-free environment, plaintiff was removed from sandblasting and offered an approved position in a relatively dust-free environment. Defendants say this occurred in 1978 but plaintiff contends he went out of the silica environment only when he left the employment in 1979. As stated by the trial judge, however, even if McDermott delayed removing plaintiff from a silica environment between November 1978 and his resignation in January 1979, the delay would have had no effect on his condition.
Therefore, we again we find no duty breached nor act rising to that of an intentional tort by any defendant such as would require us to hold them liable to plaintiff for an injury, if any, he may have sustained which was caused by sandblasting.
Based on our finding of non-liability, other issues raised by plaintiff in brief are moot.
For the foregoing reasons, we affirm the trial court’s dismissal of plaintiff’s suit. Plaintiff is to bear all costs of this appeal.
AFFIRMED.
*578 APPENDIX I
[[Image here]]
*579 [[Image here]]

. McDermott has adopted the position of plaintiff in its entirety.

. Silicosis is a disease of the lungs caused by the prolonged inhalation of dust derived from sand, stone, etc., and containing silica—a compound widely distributed in nature in the form of sand, quartz, etc.

. Herbert Schouest is the plaintiffs brother.

. Pneumoconiosis is the general name applied to a chronic form of inflammation of the lungs which is liable to affect workmen who constantly inhale irritating particles at work. It has been defined by the Industrial Injuries Advisory Council as: Permanent alteration of lung structure due to the inhalation of mineral dust and tissue reactions of the lung to its presence but does not include bronchitis and emphysema. It is liable in certain cases to develop into pulmonary tuberculosis. Some of the trades liable to suffer are those of stone-masons, potters, steel-grinders, ganister workers, colour-grinders, coal-miners, millers, and workers in cotton, flax, or wool mills.

. Jim Carroll was not a named defendant, nor did he testify.