LEAR, Judge.
In June, 1977, Kenneth G. Holder purchased 1,200 board feet of “Novoply” for the sum of $348.00 from Gill & Davidge, Inc. a hardware store located in Natalbany, Louisiana. Holder intended to use the wood for the construction of an apparatus used in hydroponic tomato farming. Hydroponics is a system of growing plants in a water and fertilizer solution. Hydroponic tomato farming involves the technique of building and using a long table which has a drop of one (1) inch for every eight feet. On top of the table there is a plastic tube through which water flows containing nutrients and the tomatoes grow in the tubes. According to the trial testimony of plaintiff, he set up such an operation after going to Florida to purchase a kit and obtaining working knowledge of hydroponics.
Upon his return, he and a colleague began looking for materials to build the tables with. Inquiry was made of defendant-ap-pellee, Gill & Davidge, Inc., as to whether it sold “shelving boards”. There are contradictory versions of what transpired, but 1,200 board feet of “Novoply”[1] was purchased and used by Holder, plaintiff-appellant, to construct the tables. Within a month’s time, the boards began to warp and buckle because of the moisture and humidity. Holder’s crop was severely damaged and it was necessary to destroy that crop, reconstruct the tables and start anew. He filed suit against Gill & Davidge, Inc. and the manufacturer of the board “Novoply”, Champion International d/b/a Champion Building Products, seeking $82,377.30 for loss of crop and market, mental anguish and attorney fees. After trial by jury, plaintiff’s suit was dismissed. He then instituted this appeal. We affirm.
The crux of this case is a dispute between the parties as to what transpired between them during appellant’s acquisition of supplies and materials for the construction of his hydroponics farm. Appellant contends that he sought the advice and assistance of Miss Patricia Gill who is the vice-president of Gill & Davidge, Inc. and one of its salespersons. Miss Gill disputes this and states that a Mr. Bob Hamilton, appellant’s colleague, is the person with whom she spoke. She states that she made a telephone call to the manufacturer while Hamilton was present and that she conveyed the substance of the conversation to Hamilton. The following is excerpted from the testimony of Patricia Gill on cross examination:
“Q. Did you call the Champion Company to discuss the Nova ply, or it’s (sic) abilities, or inabilities, before you ordered in June of ’77?
*1222 We called and from the description that I had I told the man that it would be running through a small tube, which was the picture that I had, and that no water would be exposed in the greenhouse. He said well as long as there is no high humidity it should do the work, it should be able to hold up under a four foot center.
And do you recall who you spoke with? O’
No sir I don’t. <1
Was it someone at Champion? O’
Yes it was someone at Champion, but I don’t remember who it was. They might not have even said their name. <1
And the information you received was it not to be used in high humidity situations? O’
Right. i>
Did you pass that on . . . I©
Or where water would have gotten on it directly. í>
Did you pass that on to Mr. Holder or Mr. Hamilton? <©
Mr. Hamilton was there when we called.
What about Mr. Holder? o
Mr. Holder wasn’t there. c
And it’s your testimony that you have not spoken with him on any other occasion other than on the 20th and again when he gave you the check? o
I said a little bit earlier I don’t necessarily even remember him coming in to pay for this material. I do remember talking to the gentleman over the phone to get directions to his house. I can’t remember him being in there at all.
And you don’t recall any conversations with him, that is Mr. Holder, advising him of the capabilities or incapabilities of Nova ply? o
No sir I don’t. I remember dealing with Mr. Hamilton.”
Thus defendant-appellee testified that the order was then placed only after plaintiff’s agent, Hamilton, was given the above quoted information and after he was permitted to inspect a section of “Novoply”.
Appellant specifies the following errors: (1) the jury’s verdict is contrary to the law and the evidence; (2-A and B) the court erred in admitting certain evidence and (3) the court erred in denying certain instructions.
In Specification of Error No. 1, appellant avers that the verdict of the jury is contrary to the law and the evidence. It is without sufficient specificity; further, a study of the record does not reveal any abuse of the much discretion vested in the trier of fact.
In essence, therefore, the jury was confronted with a contest of credibility of witnesses. This court has long held that a jury verdict should be maintained unless the record reflects that the jury’s conclusions of fact are not supported by the evidence or its application of the law is clearly erroneous. Broussard v. Missouri Pac. R. Co., 376 So.2d 532, La.App. 3rd Cir. (1979); Canter v. Koehring Company, 283 So.2d 716 (La.1973). In its response to the interrogatories submitted the jury answered thusly:
“BY THE COURT:
Who is the foreman of the jury? Mr. Salassi. Mr. Salassi have you all reached a verdict?
BY MR. SALASSI:
We have.
[BY THE COURT:]
Q Have you written the interrogatories as requested?
A Yes sir.
Q Are they signed and dated?
A It was dated already, and I signed it.
BY THE DEPUTY CLERK:
1. Did Kenneth Holder suffer damages caused by either or both defendants? No.
2. Is Gill and Davidge, Inc. alone the cause of the damage, if any, suffered by Kenneth Holder? No.
*1223 3. Is Champion International Corporation d/b/a Champion Building Products alone the cause of the damage, if any, suffered by Kenneth Holder? No.
4. Did Kenneth Holder assume the risk? Yes.
BY THE COURT:
All right. Then No. 6, the damages suffered by Kenneth Holder is all blank?
BY THE DEPUTY CLERK:
It is all blank.”
It is clear from a reading of the record that the jury resolved the conflicts in testimony and the issues of credibility in favor of defendant-appellees. We find no manifest error in the result. The guidelines articulated in Canter are equally applicable herein:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
In Specifications of Error 2A and 2B, appellant complains of the alleged receiving into evidence of incompetent, irrelevant and totally inadmissible demonstrative evidence, which was, he states, manifestly erroneous and prejudicial. We do not find that to be true, Arguendo, if such an assumption were made, there was other competent, relevant and admissible credible evidence to justify the finding of the jury.
In Specification of Error No. 3, appellant contends that the court erred in failing to give an alleged proper jury instruction, citing Peltier v. Seabird Industries, Inc., 309 So.2d 343 (La.1975). Appellant relies upon the dictum in that case regarding “professional vendors”, enunciated by former Justice Barham. Such is merely a theory and is not the accepted law of our state. As stated in Barrios v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir. 1971) the trial judge may properly refuse to give a requested instruction when some portions thereof are not correct statements of law, or are simply argument, or have been covered in the charges given to the jury.
Further, we have the complete record before us and, under the doctrine of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), even if the instructions were erroneous, we have a duty to decide the case. We are convinced that the general charge adequately covered the matter and, further, that the plaintiff did not bear the burden of proof.
For the foregoing reasons, the judgment of the trial court is affirmed, and appellant is to pay all costs of this appeal.
AFFIRMED.

. “Novoply” was described by the manufacturer testifying at trial as a particle board that is made from engineering wood chips, pressed from a thick mat down to the thickness desired. It is made of wood chips and adhesives.