492 So.2d 31 (1986)
Alan L. SNOW
v.
GULF STATES UTILITIES COMPANY and American Home Assurance Company.
No. CA-85-0391.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied August 20, 1986.
Writs Denied November 7, 1986.
*33 Edward J. Walters, Jr., and Charles R. Moore, Baton Rouge, for plaintiff-1st appellant Alan L. Snow.
Kenneth M. Henke, Lafayette, for intervenor-appellee American Mut. Liability Ins. Co.
John W.L. Swanner, Baton Rouge, for defendant-appellee Larry L. Walsh, Larry Walsh & Associates, Inc. and St. Paul Fire & Marine Ins. Co.
C. Michael Hart, and William Luther Wilson, Baton Rouge, for defendant-2nd appellant Gulf State Utilities Co.
Before LOTTINGER, SHORTESS and CRAIN, JJ.
LOTTINGER, Judge.
This case involves an appeal from a jury verdict awarding the plaintiff, Alan Snow, damages for personal injuries resulting from electrocution after he came into contact with uninsulated electrical transmission wires. Named as defendants were Gulf States Utilities and its insurer, Larry Walsh & Associates, Inc. and its insurer, and Larry Leo Walsh individually.

FACTS
Larry Walsh & Associates, Inc. (hereinafter referred to as contractor) is in the contracting business, acting as general contractor for commercial and residential construction. The company is owned by two shareholders, Larry Leo Walsh and a person not relevant to this lawsuit. The contractor had purchased two adjacent lots in a developed subdivision in East Baton Rouge Parish, referred to as lots 38 and 39. The contractor intended to construct two four-plex apartment units, one on each lot.
After purchasing these lots, the contractor had them cleared and poured concrete foundations for the buildings. The foundation on lot 39 bordered a 7.5 foot electrical servitude on the side of the lot.
The electrical servitude was in favor of Gulf States Utilities (GSU) who, one year earlier had constructed poles and electrical wires for the transmission and distribution of electricity. Within the servitude, poles supported three wires. The lowest wire was a grounded guy wire and carried no *34 current. The center wire was energized, carrying 7,620 volts of electricity. The top wire was the system ground and carried no current. All three wires were 3 feet 10 inches from the edge of the servitude, as well as the rear of the proposed buildings.
The contractor employed no direct construction employees, and used subcontractors and their employees to perform the work. Alan Snow was employed by Earl Bell as a carpenter. Bell had contracted with the contractor to perform some of the necessary carpentry work. At the time of the accident, Snow and other carpenters were preparing to install siding on the rear of the building on lot 39, which was near completion. The building was two stories tall and in order to install the siding, scaffolding was to be used. The scaffolding was five feet square, and a number of feet tall. Since the scaffolding was wider than the distance between the building and wire, the scaffolding necessarily contacted the neutral bottom wire during the process of delivery. This wire was pulled or forced around the side of the scaffolding. When the next section of scaffolding was placed on top of the lower section, it contacted the energized wire. Snow, who was assembling the scaffolding, was electrocuted and suffered numerous burns over his body.
Based on the above, Snow filed suit against GSU basically alleging that GSU failed to take adequate measures to protect Snow, and that GSU was strictly liable under La.Civ.Code art. 2317 as the owner and custodian of the wire. Snow also sued Larry Walsh individually and Larry Walsh & Associates, Inc., alleging the failure to take adequate measures to protect the workers who were constructing the buildings.
Pursuant to a motion for directed verdict, the actions against Larry Walsh & Associates, Inc. and its insurer, as well as Larry Walsh individually were dismissed. The grounds for the directed verdict were that these defendants were the statutory employers of Snow and no intentional act was committed against Snow. Therefore, under La.R.S. 23:1032, Snow's exclusive remedy as to these defendants was for Worker's Compensation.
The case against GSU was submitted to a jury which resulted in a verdict in favor of Snow for $200,000.

ASSIGNMENTS OF ERROR
From this jury verdict, GSU appeals, asserting the following as errors by the trial court and jury:
(1) in concluding that GSU was at fault;
(2) in concluding that Snow was not contributorily negligent and did not assume the risk of his injuries;
(3) in refusing to allow GSU to offer evidence of its public awareness programs;
(4) in refusing to allow GSU to offer evidence of how it responds to requests from owners and contractors for assistance;
(5) in refusing to give proposed jury instruction regarding the presence of electrical transmission lines;
(6) in refusing to instruct the jury regarding the "Louisiana Scaffolding Law"; and
(7) in refusing to instruct the jury regarding La.Civ.Code art. 748.
In addition, Snow has appealed the directed verdict in favor of Larry Walsh and the contractor, alleging the following as erroneous:
(1) in concluding that Walsh was the statutory employer of Snow; and
(2) in concluding that Walsh did not commit "intentional acts" which caused Snow's injuries.

APPEAL OF GSU

I
GSU first questions the jury's finding of liability. In Hebert v. Gulf States Utilities Company, 426 So.2d 111 (La.1983), our Supreme Court stated the duties relative to electric transmission companies as follows:
Electric transmission companies which maintain and employ high power lines are required to exercise the utmost care *35 to reduce hazards to life as far as practicable. Simon v. Southwest La. Elec. Membership, 390 So.2d 1265 (La.1980); Nessmith v. Central La. Electric Co., 257 So.2d 744 (La.App. 3d Cir.), writ denied, 261 La. 480 [483], 259 So.2d 921, 922 (1972). However, an electric utility is not required to guard against situations which cannot reasonably be expected or contemplated. Simon, supra.
See also: LeBlanc v. Wall, 430 So.2d 1130 (La.App. 1st Cir.1983), writ denied 438 So.2d 571 (La.1983).
The court in Hebert went on to distinguish Simon and Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982), by finding "no ease of association between the risk presented by the utilities' conduct under the overall circumstances and the resulting injuries," as was present in Hebert. Hebert, 426 So.2d at 114. The court found that under the facts in Hebert the risk that an iron worker working fifteen feet above the ground and placing a twenty foot metal beam on the top outside of a metal building will be electrocuted by inadvertently touching a power line only eleven diagonal feet away from him was included within the utility's duty to reduce hazards to life. Hebert, 426 So.2d at 115.
In the present case, the energized wire which caused plaintiff's injuries was 23.8 feet above the ground and 3 feet 10 inches from the edge of the servitude and rear of the building.
The accident occurred in a newly developed subdivision in which other construction projects were common. In addition, GSU knew or should have known the close proximity of the wire to the construction site through its serviceman who installed a temporary electrical connection after the concrete foundations had already been laid. Although the wires were located in the center of the servitude, they were a mere 3 feet 10 inches from the rear of the building, a fact which GSU's representative acknowledged as being "too close for comfort." In addition, GSU knew when it erected the lines one year earlier that buildings were to be constructed on the lots and that the owner had a right to build up to the servitude line. These circumstances exemplify the "ease of association" between the risk presented and the resulting injuries, as well as distinguish the present case from the unusual circumstances present in Simon and Kent. Hebert, 426 So.2d at 114; Kent, 418 So.2d at 499. Therefore, the risk that a construction worker installing siding on the rear of a two-story building will be electrocuted by touching a power line located only three feet ten inches from his work place is within the scope of the utility's duty to exercise the utmost care to reduce hazards to life as far as practical.
The three fold duty of utilities in cases where injuries are easily associated with the transmission of electricity over high power lines is (1) to insulate the lines, or (2) to warn adequately of the danger, or (3) to take other proper and reasonable precautions to prevent injury. Hebert v. Gulf States Utilities Company, supra; Le-Blanc v. Wall, supra.
GSU contends that it was not liable in that the wires were constructed to meet and exceed all National Electrical Safety Code standards, and the wires were "insulated by isolation" pursuant to the mandates of the code.
"Insulation by isolation" means that the lines, because of their location, are not readily accessible to people. The heights of the wires in this case are as follows: (1) The top, neutral wire was 28.58 feet above the ground; (2) the middle, energized wire was 23.8 feet above the ground; (3) the bottom, guy wire, also neutral, was 16.71 feet above the ground. The building, at its highest point, was 29.86 feet above the ground, placing it higher than all three wires. When Snow was electrocuted he was preparing to work on the building three feet 10 inches away from the energized line. This distance is a far cry from the proper margin of safety required for a building under construction. See Hebert v. Gulf States Utilities Company, supra, which rejected the precise argument proposed *36 herein. As far as the national standards asserted by GSU, such standards are for already constructed solid wall buildings without windows facing the servitude, and not for buildings under construction, as in the present case. Hebert v. Gulf States Utilities Company, 426 So.2d at 115.
GSU further alleges that it was not at fault, and was used as a "scapegoat" for Walsh's fault after Walsh had been dismissed from the suit. However, we have already concluded that GSU was at fault and failed to satisfy one of the above-mentioned duties.
Therefore, this assignment is without merit.

II
In its next assignment of error, GSU questions the jury's finding of no contributory negligence and no voluntary assumption of the risk by Snow. The basic contention is that Snow acted unreasonably in raising the scaffolding into the electrical line which he knew or should have known was energized. It is urged that this is especially true when considering that Snow knew that the scaffolding would contact the wire, as the lower non-energized wire had to be moved to accommodate the lower section of scaffolding.
Working near electrical power lines is neither contributory negligence per se nor assumption of the risk. Likewise, the fact that a person's own actions bring him in contact with high voltage lines does not necessarily render him negligent. Esco v. Smith, 468 So.2d 1169, 1174 (La.1985); Hebert v. Gulf States Utilities Company, 426 So.2d at 117. In assessing the negligence and contributory negligence in a particular case, courts do not require identical conduct of the parties, because varying factors affect what the standard of the reasonable man requires. Esco v. Smith, supra. The question which we must answer is whether "`the party's conduct conformed) to the standard of care that would be exercised by a reasonable man; or did the conduct breach a duty imposed upon the party to protect against the particular risk from which the accident resulted?'" Esco v. Smith, supra, quoting Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La. 1976).
No attempt was made by Snow's superiors or GSU to minimize the dangers of electrocution. Snow had no part in the decision of where to locate or how to construct the building. His only alternatives were "to try to tell his superior[s] how to run the job or to quit." Hebert v. Gulf States Utilities Company, supra; Tirante v. Gulf States Utilities Company, 412 So.2d 128 (La.App. 1st Cir.1982), writ denied 414 So.2d 389 (La.1982).
The application of siding with the use of scaffolding had been efficiently used in the past and is a standard method utilized in the construction industry. Although Snow suffered amnesia and could remember nothing about the accident, a co-worker at the time of the accident testified that they had not been warned of any potential danger and they assumed that their superiors had placed them in a safe work environment. Also, the co-worker assumed that since the bottom wire, which was touching the scaffold, was not energized the remaining wires were also not energized. Both this co-worker and Snow testified that had they known the wire was energized they would have never made contact with it and would have requested the electricity to be temporarily interrupted, or some other measure to prevent being electrocuted.
Based upon the evidence presented, reasonable men could have concluded that Snow did not voluntarily and unnecessarily expose himself to the danger of contacting an energized electric transmission line. The evidence could support a conclusion that Snow reasonably assumed that his employer would not provide him an unsafe working environment, and that the line was not energized. As such, we are unable to conclude that the jury's finding was manifestly erroneous or clearly wrong.
In regards to the allegation that Snow assumed the risk of his injuries, the fact that Snow was aware of the danger of *37 working around electrical power lines does not preclude his recovery. Esco v. Smith, supra. Particularly is this true in the present case when, as we have already concluded, Snow could have reasonably believed that the line was not energized at the time of the accident. It has not been established that such an assumption was unreasonable or that Snow had actual knowledge that the line was energized and he was subject to electrocution. Absent such a showing, it cannot be said that he assumed the risks of his injuries. Dorry v. LaFleur, 399 So.2d 559 (La.1981).
GSU stresses the fact that Snow deliberately pushed the scaffolding into the energized wire. Although this may be true, it does not render Snow negligent nor establish he voluntarily encountered the risks of electrocution. It must be remembered that Snow was acting reasonably in assuming that the work environment was safe and the wire was not energized.

III AND IV
In these assignments of error, GSU questions the exclusion of certain evidence on grounds that the evidence was irrelevant. The first such evidence involved public awareness programs by GSU aimed at educating the general public in regards to the hazards of electricity. The other evidence dealt with a program of GSU which was aimed at helping owners and contractors, and how GSU responded to their requests for assistance.
GSU has failed to state at trial or in brief the relevancy of the evidence to this particular case. The public awareness programs involved bumper stickers and safety plugs for outlets. The second was general responses to contractors' requests. It has not been shown that Snow had seen these bumper stickers or participated in any awareness programs. In addition, informing contractors of how GSU responded to requests from contractors in other situations, and providing contractors the facts of other electrocution cases involving GSU are irrelevant to GSU's duty to a particular plaintiff and the particular facts involved in this case. GSU has shown no connection between its public awareness programs and responses to contractors' requests and the facts of this particular case. As such, no error was committed, as the evidence was irrelevant.

V
In this assignment, GSU contends that error was committed in refusing to give proposed jury instructions, which contain a quote from Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). GSU relies on dictum in Cates regarding electrical transmission wires as being an announcement of danger with their mere existence constituting adequate notice that the line is energized and dangerous.
The trial judge, rather than utilizing these instructions, opted for exerpts from Hebert v. Gulf States Utilities Company, supra, and rendered adequate instructions regarding contributory negligence and assumption of risk in electrocution cases. The instructions proposed by GSU were theoretical and, in light of the statements in Hebert and Esco, not accurate statements of the law. A trial judge can properly refuse to give requested instructions which are misleading, not correct statements of the law, or are simply argumentative. Holder v. Gill & Davidge, 391 So.2d 1220 (La.App. 1st Cir.1980). In addition, the proposed instructions are quotes from the dictum in a case which is very different from the present suit. In Cates, a seventeen year old boy climbed an apparently abandoned utility pole intending to cut a wire which was attached to the pole. The teenager stood on a transformer attached to the pole, reached for pliers, slipped, and grabbed the primary conductor, which resulted in his electrocution. This is quite different from the present case where the plaintiff relies on his employer to provide a safe work place, and is electrocuted by a wire which is located less than four feet away from his work place. Although Snow was aware of the potential *38 danger, he was justified in his belief that the wire was not energized. Therefore, in addition to the foregoing reasons, the trial judge was not erroneous in refusing to incorporate GSU's proposed instructions into his jury instructions.

VI AND VII
In its last two assignments, GSU contends it was error not to instruct the jury regarding La.R.S. 40:1672 and La.Civ.Code art. 748. However, these statutes are irrelevant to the present case and no error was committed.
La.R.S. 40:1672 is a scaffolding law which provides, in pertinent part, that all scaffolds used in the construction of buildings must be constructed and placed to insure the safety of workers working thereon and in the general area of the scaffolding. The statute, as evidenced by the reporter's note, is to insure the use of safe scaffolding and to prevent objects from falling from the scaffolding and injuring a person on the ground. It is not aimed at an employee who is electrocuted while erecting an otherwise safe scaffolding.
La.Civ.Code art. 748 regulates the rights between owners of a servitude and owners of the servient estate when the location of the servitude becomes burdensome to the servient estate. Nothing therein attempts to regulate a third party such as an employee of a carpentry contractor assigned to perform work on the border of the servitude.
These assignments have no merit.

APPEAL OF ALAN SNOW
Snow alleges error in the granting of a directed verdict in favor of Larry Walsh, particularly questioning the conclusions that Walsh was Snow's statutory employer, that Snow's injuries were not the result of an intentional tort by Walsh, and that Snow's exclusive remedy regarding Walsh is Worker's Compensation benefits.

I: STATUTORY EMPLOYER
In order for Walsh to be Snow's statutory employer, it must be shown that the work performed by Snow was part of Walsh's "trade, business or occupation," and that Walsh was engaged in that trade, business, or occupation at the time of the injuries. Rowe v. Northwestern National Insurance Company, 471 So.2d 226 (La. 1985); Lewis v. Exxon Corporation, 441 So.2d 192 (La.1983). The work or project must be routine or customary, or some other type of activity necessary for Walsh's day-to-day operations. Lewis v. Exxon Corporation, supra.
The evidence establishes that at the time of the injury, Walsh was in the business of constructing and selling commercial and residential property. Snow was employed by Earl Bell, who had contracted with Walsh to perform carpentry work on the buildings in question. Such carpentry work was an integral part of Walsh's construction business and essential to his day to day operations.
The nature of the construction business is that some, if not most, of the construction work is performed by subcontractors and their employees, and not by employees of general contractors or owner of the premises. The fact that Walsh chose to utilize contractors and their employees to perform the construction work does not preclude a finding of statutory employer status. Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978); Fontenot v. Andrus Homes, Inc., 391 So.2d 42 (La.App. 3d Cir.1980); Fultz v. McDowell, 344 So.2d 410 (La.App. 1st Cir.1977). Therefore, we conclude that no error was committed, and Walsh was the statutory employer of Snow.

II: INTENTIONAL TORT
La.R.S. 23:1032 excludes "intentional acts" from its exclusive remedy provisions.
The meaning of "intent" in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain *39 to follow from his act. Bazley v. Tortorich, 397 So.2d 475 (La.1981).
It is not contended that Walsh desired to bring about Snow's injuries. Rather, it is urged that based on the close proximity of the wires to the building, the height of the wires, and that Walsh knew the wire was energized, Walsh was "substantially certain" that someone would be electrocuted.
"Substantially certain" is not an alternative to "intentional act," but is a method of proving that the act was intentional. Babin v. Edwards, 456 So.2d 659 (La.App. 1st Cir.1984), writ denied 460 So.2d 604 (La. 1984). This method of proving intent requires a strong link between the defendant's conduct and the plaintiff's injuries. Gallant v. Transcontinental Drilling Company, 471 So.2d 858 (La.App. 2d Cir. 1985). Furthermore, "substantially certain" requires more than a reasonable probability that an accident or injury will occur and "certain" has been defined as "inevitable" or "incapable of failing." Manning v. Better Way Coatings, Inc., 448 So.2d 227 (La.App. 1st Cir.1984), writ denied 450 So.2d 969 (La.1984); Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.1982), writ denied 415 So.2d 953 (La.1982).
Although Walsh knew the energized wires were present in the servitude, he did not know the precise location and proximity of the wires. Furthermore, Walsh made regular inspections of the worksite and had warned Snow's employer of the danger of electrocution, as he knew that some of the work had to be done in the servitude. In addition, Walsh testified that blackboard, an insulating material which was to be covered by the siding, had been placed on the rear of the building without any injury, presumably with the use of the scaffolding. Finally Walsh testified that prior to the accident, he did not know the scaffolding would contact the wires.
Although Walsh's decision to not contact G.S.U. regarding the energized line may have been a negligent one, we are unable to conclude that Snow's injuries were strongly linked to Walsh's conduct in that such injuries were "substantially certain" to occur or inevitable. As such, Walsh was not guilty of an intentional act within the meaning intended in the statute.
A motion for directed verdict should be granted if the facts and inferences from the evidence point so strongly in favor of one party so that reasonable men could not arrive at a contrary verdict. Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir. 1979). The evidence set forth above establishes, in our opinion, that under the law as set forth above, reasonable minds could not conclude that Walsh was not the statutory employer of Snow and that this was an intentional act on the part of Walsh. Therefore, no error was committed.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to GSU.
AFFIRMED.