578 So.2d 236 (1991)
Timothy Wayne FOUNTAIN, Plaintiff-Appellant,
v.
CENTRAL LOUISIANA ELECTRIC CO., INC., Defendant-Appellee.
No. 89-1018.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Writ Denied June 21, 1991.
*237 Rivers & Beck, Robert Beck, Jr., Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, James D. Kirk, Mark A. Watson, Alexandria, for plaintiff-appellant (Argonaut).
Gold, Weems, Bruser, Sues & Rundell, Dee D. Drell, Alexandria, for defendant-appellee.
Before DOMENGEAUX, C.J., and DOUCET and LABORDE, JJ.
DOUCET, Judge.
This case concerns the question of whether the defendant, Central Louisiana Electric Co., Inc. (CLECO), was the statutory employer of the plaintiff, Timothy Wayne Fountain.
Fountain was injured in the course and scope of his employment as an apprentice lineman with Red Simpson, Inc. (Simpson). At the time of the accident, Simpson was converting a portion of an electric substation from 13.2 kilovolts to 34.5 kilovolts to provide an increased power supply, under a contract with CLECO. As a result of the accident and injury, Simpson and its insurer, Argonaut Insurance Co. (Argonaut), paid worker's compensation benefits to Fountain. Fountain brought this suit for damages under La.C.C. art. 2315 against CLECO. Simpson and Argonaut intervened to recover benefits paid CLECO. CLECO filed a motion for summary judgment asserting that as Fountain's statutory employer, it is immune from tort liability. After a hearing, the trial judge granted the motion and dismissed Fountain's claim against CLECO, noting in his reasons for judgment that the case involved "a workmen's comp situation pure and simple." Fountain, Simpson and Argonaut appeal.
Appellant argues that the trial court erred in finding that CLECO was the statutory employer of Fountain and that material issues of fact remained precluding summary judgment.
Under the provisions of La.R.S. 23:1061, employees of contractors are, under certain circumstances, considered to be the employees of the principal. In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the court enunciated a three tier analysis by which the existence of a statutory employment relationship can be determined. See also Lewis v. Exxon Corp., 441 So.2d 192 (La.1983).
"In the first level, the primary focus is on the scope of the contract work. `The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered.' Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, *238 and the principal is not the statutory employer of the specialized contractor's employees. In this situation, `the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play' because the contractor is an independent business enterprise, rather than a mere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, §§ 78, 126 (1980).
If it is determined that the contract work is non-specialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson [v. Seagraves, 436 So.2d 525 (La.1983) ], supra; Barnes, [v. Sun Oil Co., 362 So.2d 761 (La. 1978) ], supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C. A. Larson, The Law of Workmen's Compensation, § 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir. 1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, § 126, pp. 252-53, fn. 91.
These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry giant be regular. Similarly while the type of contract work may be nonspecialized (i.e. manual labor), for a small concern it may well be beyond the expertise or capability of its employees. 1 A. Larson, Workmen's Compensation for Occupational Injuries and Death, § 49.13 (Desk ed. 1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of `whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors.' Id. (emphasis added)
Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level `[i]t is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury.' Lewis, supra."
Berry, supra, pp. 937-939.
In the case before us, Mr. Michael Prudhomme, Vice-President of Customer Services for CLECO, testified at deposition that CLECO employees had the skill, training, experience, and equipment to do the work which was contracted out. As a result, the work appears to be non-specialty.
*239 Therefore, we will go on to determine whether the contract work is a part of CLECO's trade, business or occupation. Prudhomme also testified that a major conversion of a particular line, as contracted out to Simpson here, is done only about once every twenty years, or once in the lifetime of a line at most, and that many lines are built and never converted. He testified that this work is in effect a reconstruction of the line. Prudhomme further stated that CLECO employees are capable of doing the work involved, and do such work on a smaller scale. However, conversions of the magnitude involved here are contracted out as a matter of policy. To do such conversions in-house would require the commitment of one-third of CLECO's repair staff and would prevent the performance of day-to-day line maintenance and customer service. Finally, we find no testimony of record which indicates that CLECO was involved in similar conversions at the time of the accident.
These factual circumstances are quite similar to the situation involved in Lewis, supra. In keeping with that decision, and considering the facts currently before us, we cannot find that CLECO was the statutory employer of Fountain. The testimony of CLECO's representative indicates that the work is non-recurring. Further, it appears that CLECO does not have manpower capable of doing the job and maintaining normal operations as well. As in Lewis, supra, CLECO had a policy of contracting out the type and magnitude of work involved in the contract, and the work was not customarily done by CLECO. Further, even if CLECO could have used its own employees to do the work, it chose not to do so. As a result, CLECO is not protected by the exclusive remedy rule of worker's compensation statute.
Accordingly, the trial court judgment dismissing Fountain's suit is reversed and set aside. This case is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the appellee.
REVERSED AND REMANDED.
DOMENGEAUX, C.J., concurs and assigns brief reasons.
DOMENGEAUX, Chief Judge, concurring.
I agree with the reasoning and the result in the majority opinion: Under the test formulated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), CLECO is not the plaintiff's statutory employer. However, I think it should be mentioned that by Acts 1989, No. 454, effective January 1, 1990, the Legislature amended La. R.S. 23:1061(A), apparently overruling Berry and much of the other jurisprudence defining "trade, business, or occupation." Considering the sweeping change this amendment makes in our prior law, I think it is clearly substantive and should not be applied retroactively. I am, therefore, writing to expressly disagree with the holding of the Federal Eastern District in Brock v. Chevron Chemical Company, 750 F.Supp. 779 (E.D.La.1990).