596 So.2d 243 (1992)
Clyde A. BOWENS, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee, and Louisiana Insurance Guaranty Association, Defendant-Appellant.
No. 90-929.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Rehearing Denied April 8, 1992.
Writ Granted June 5, 1992.
*244 Broussard, Bolton, Halcomb & Vizzier, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for defendant-appellant LIGA.
Lunn, Irion, Johnson, Salley & Carlisle, Frank M. Walker, Jr., Shreveport, for defendant-appellee GM.
Before FORET and LABORDE, JJ., and PATIN[*], J. Pro Tem.
LABORDE, Judge.
This case arose from a motor vehicle accident in which the plaintiff ran into the back of an eighteen wheeler. Plaintiff was delivering parts for General Motors from Michigan to Louisiana. Plaintiff was injured as a result of this accident and filed suit against General Motors Corporation (GM), Bonded Freight Service, Inc., and Louisiana Insurance Guaranty Association (LIGA) for worker's compensation benefits. After trial on the merits, the trial court found General Motors was not plaintiff's statutory employer and that LIGA was liable to plaintiff for worker's compensation benefits as well as penalties and attorney's fees. We reverse the decision of the trial court finding GM is the statutory employer of the plaintiff, and thus, LIGA is not responsible for worker's compensation benefits, penalties or attorney's fees.

FACTS
On February 5, 1989, plaintiff was employed by Bonded Freight Service, Inc. (Bonded). Bonded had been hired by General Motors Corporation (GM) to transport parts for their trucks from the manufacturing plants in Michigan to the assembly plant in Shreveport, Louisiana. After picking up a load of engines from the Michigan plant, plaintiff was en route to Shreveport when he slid into the back of an eighteen wheeler after attempting to stop on an icy road.
This accident occurred on Louisiana Highway 3 approximately five or six miles north of Plain Dealing, Louisiana. Plaintiff suffered disabling injuries to his neck, both shoulders and arms, back, and left leg. Plaintiff requested worker's compensation benefits from his employer, Bonded, and their insurer, Anglo American Insurance Company. Plaintiff received three checks from Bonded in the amount of $267.00. After no further payments were received, plaintiff filed suit for worker's compensation benefits naming General Motors, Bonded, and LIGA as defendants. Prior to trial, Anglo American Insurance Co. was declared insolvent with LIGA assuming responsibility for their policies and Bonded declared bankruptcy causing a stay order to be placed on all proceedings against them. Plaintiff's claims against Bonded was severed, and the matter proceeded *245 to trial against the remaining defendants, GM and LIGA.
The trial court found GM was not plaintiff's statutory employer and thus not responsible for worker's compensation benefits. The court also found LIGA was responsible for worker's compensation benefits to the plaintiff and that LIGA had acted arbitrarily and capriciously in withholding such benefits and was therefore liable for penalties and attorney's fees. The plaintiff and defendant, LIGA, now appeal this judgment alleging five assignments of error. Since the plaintiff and LIGA have appealed separately, we will address each of their assignments of error individually.[1]

WORKER'S COMPENSATION
The plaintiff alleges in his first assignment of error the trial court erred in not applying the amendment to La.R.S. 23:1061. This statute reads as follows:
PART I. SCOPE AND OPERATION
SUBPART C. LIABILITY OF PRINCIPAL TO EMPLOYEES OF INDEPENDENT CONTRACTOR
§ 1061. Principal contractors; liability
A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
Amended by Acts 1989, No. 454, § 3, eff. Jan. 1, 1990. (Amendment emphasized)
This statute was amended by Acts 1989, No. 454, section 3, effective January 1, 1990. The cause of action in the present case arose on February 5, 1989, thus the pertinent issue is whether this amendment should be applied retroactively or prospectively. This issue was directly addressed by this court in Fountain v. Central Louisiana Electric Co., Inc., 578 So.2d 236 (La.App. 3d Cir.1991), writ denied, 581 So.2d 707 (La.1991). Judge Domengeaux in his concurring opinion stated:
"However, I think it should be mentioned that by Acts 1989, No. 454, effective January 1, 1990, the Legislature amended La.R.S. 23:1061(A), apparently overruling Berry and much of the other jurisprudence defining `trade, business, or occupation.' Considering the sweeping change this amendment makes in our *246 prior law, I think it is clearly substantive and should not be applied retroactively."
The La.C.C. art. 6 states that in the absence of contrary legislative expression, substantive laws are to be applied prospectively only. There has also been much jurisprudence in this area holding laws that are substantive in nature are to be applied prospectively. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985); Miller v. J.P. Owen Co., Inc., 509 So.2d 1038 (La.App. 3d Cir.1987), writ denied, 514 So.2d 455 (La. 1987). Applying the above statute and jurisprudence, we agree with Judge Domengeaux and find the amendment to be substantive and thus will not be applied retroactively. Therefore, the trial court did not err in not applying this amendment to the present case.

STATUTORY EMPLOYEE
Plaintiff asserts in his second assignment of error the trial court erred in finding GM was not plaintiff's statutory employer.
As stated in La.R.S. 23:1061, employees of contractors may be considered employees of the principal if certain conditions are satisfied. The hallmark case in this area is Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). While we recognize the amendment to the statute seems to alter the Berry analysis, we have found the amendment should only be applied prospectively, and thus, the Berry analysis will be applied in the present case. In Berry, the supreme court enunciated a three tier analysis for determining the existence of a statutory employment relationship. See also Lewis v. Exxon Corp., 441 So.2d 192 (La.1983).
"In the first level, the primary focus is on the scope of the contract work. `The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered.' Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees. In this situation, `the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play' because the contractor is an independent business enterprise, rather than a mere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La.Civil Law TreatiseWorker's Compensation, §§ 78, 126 (1980).
If it is determined that the contract work is non-specialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson [v. Seagraves, 436 So.2d 525 (La.1983)], supra; Barnes, [v. Sun Oil Co., 362 So.2d 761 (La. 1978) ], supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).

*247 (2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C A. Larson, The Law of Workmen's Compensation, § 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir. 1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, § 126, pp. 252-53, fn. 91.
These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry giant be regular. Similarly while the type of contract work may be non-specialized (i.e. manual labor), for a small concern it may well be beyond the expertise or capability of its employees. 1 A. Larson, Workmen's Compensation for Occupational Injuries and Death, § 49.13 (Desk ed. 1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of `whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors.' Id. (emphasis added)
Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level `[i]t is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury.' Lewis, supra."
Berry, supra, pp. 937-939.
In the case at bar, the trial court looked at the scope of the contract work and determined that "after a review of the jurisprudence of this state, truck driving operations are not specialized per se, and in fact, the operation of Clyde Bowens in this case was specifically found not to be in that category". We agree. See, Humphrey v. Louisiana Power & Light Co., 546 So.2d 520 (La.App. 4th Cir.1989).
Once it has been determined that the contract work is not specialized per se, the court must then determine whether the contract work is a part of GM's trade, business or occupation. The criteria to be looked at is whether the work is routine, customary, regular, or predictable, and whether the principal has the equipment and manpower capable of performing the contract work. At the trial on the merits, several employees of GM testified about the characteristics of the contract work.
Mr. Herbert R. Hynson, traffic manager for GM, testified that Bonded was the only minority carrier in the Shreveport area at the time of the accident. He further testified it was extremely important the engines be delivered within twenty-four hours to avoid a shut down of the assembly plant. The engines are not kept in large supply at the assembly plant because of the size and cost, therefore, they must be shipped on a regular basis to the plant. Mr. Hynson further stated approximately five to seven trucks a day are unloaded at the Shreveport plant with engines. These trucks deliver parts on a regular and routine basis, and the delivery of these engines is essential to the final assembly, sale of the vehicles, and GM's overall business.
Also testifying at trial was GM's manager of materials transportation, Mr. Brian Plante. Mr. Plante coordinates the activities of the General Motors Division and the plants responsible for transportation of parts. He testified GM owns 600 trucks and employs 600 drivers. Approximately ten percent of GM's trucks and drivers are used for interstate transportation while the *248 rest are used for intrastate transportation. Independent carriers, such as Bonded, are hired to supplement the rest of GM's interstate transportation needs because they are less expensive than if GM used their own employees and trucks. Mr. Plante further stated some of the trucks and drivers GM employs for intrastate transportation are also capable of interstate transportation. He also confirmed the testimony of Mr. Hynson stating the delivery of parts to assembly plants is conducted on a routine and regular basis and is considered a customary part of GM's overall business. With regard to the industry practice, Mr. Plante testified Ford operates its transportation division similar to GM but Chrysler uses their own trucks and drivers to a much greater extent for interstate transportation of parts.
Reviewing these factual circumstances in conjunction with the Berry analysis, it is clear the interstate transportation of parts is a routine and customary part of GM's business that is performed on a regular basis. In addition, while GM chooses to hire independent trucking companies for their interstate deliveries, they are capable of performing this contract work with their own equipment and manpower. Therefore, we find the interstate transportation of parts is a part of GM's regular business. See, Fontenot v. Andrus Homes, Inc., 391 So.2d 42 (La.App. 3d Cir.1980); Butler v. Home Ins. Co., 448 So.2d 801 (La.App. 2d Cir.1984), writ denied, 450 So.2d 954 (La. 1984); Snow v. Gulf States Utility Co., 492 So.2d 31 (La.App. 1st Cir.1986), writ denied, 496 So.2d 349 (La.1986); 496 So.2d 356 (La.1986). The practice in the industry ranges from minimal interstate transportation to extensive interstate transportation. Thus, it is common in the industry for the companies to participate in interstate transportation. Lastly, we find, based upon the evidence, GM was involved in this type of work at the time of plaintiff's accident.
After analyzing the facts of this case under Berry, we find the contract work performed by the plaintiff was part of GM's trade, occupation or business making the plaintiff GM's statutory employee. The testimony of GM's representatives indicates the contract work is recurring. Further, it appears GM is capable of performing the contract work. Even though GM had a policy of contracting out the majority of interstate transportation, a small portion was still customarily performed by GM. As a result, we find the trial court erred in finding GM was not the plaintiff's statutory employer.

LIGA'S ASSIGNMENTS OF ERROR
LIGA alleges in its first assignment of error the trial court erred in determining there was no statutory relationship between the plaintiff and GM.
Since this issue has been fully addressed, we find it unnecessary to restate our reasons finding GM to be the statutory employer of the plaintiff.
LIGA's second and third assignments of error involve LIGA's position if they are found to be responsible to the plaintiff for worker's compensation benefits. Since this court has found GM responsible for worker's compensation benefits to the plaintiff as his statutory employer and not LIGA, these last two assignments of error need not be addressed.

CONCLUSION
Accordingly, the trial court judgment dismissing plaintiff's suit against General Motors is reversed and set aside. The judgment in favor of plaintiff, Clyde A. Bowens, and against defendant, Louisiana Insurance Guaranty Association, is reversed and set aside. Lastly, judgment is now rendered in favor of the plaintiff, Clyde A. Bowens, and against General Motors Corporation. As the plaintiff has appealed in forma pauperis, all costs of this appeal will be assessed to the defendant, General Motors Corporation. We recast the judgment of the trial court to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, CLYDE A. BOWENS, and against the defendant, GENERAL MOTORS CORPORATION, finding plaintiff to be temporarily totally disabled and ordering said defendant to pay to plaintiff weekly *249 disability benefits at the rate of $267.00 per week for each weekly period from the date of plaintiff's injury, February 5, 1989, which payments are to be continued for so long as plaintiff continues to be disabled from returning to employment in accordance with Louisiana Law;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, GENERAL MOTORS CORPORATION, pay to plaintiff all related medical expenses which, as of the time of trial, totalled $3,453.02;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, GENERAL MOTORS CORPORATION, pay to plaintiff all related travel expenses which, at the time of trial, totalled $264.24;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, GENERAL MOTORS CORPORATION, pay to plaintiff, as a penalty, twelve percent damages on all amounts awarded plaintiff herein together with reasonable attorney's fees in the amount of THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that an expert witness fee in the amount of $250.00 be fixed and taxed as costs for the testimony given by Dr. C.J. Rich;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following bills be taxed as costs: M & S Court Reporting Service, Inc. for the taking of the trial deposition of Dr. C.J. Rich $110.20; and, Smart Corporation for a certified copy of the records from Rapides General Hospital$12.69;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendant, LOUISIANA INSURANCE GUARANTY ASSOCIATION, and against the plaintiff, CLYDE A. BOWENS, dismissing plaintiff's demands against said defendant with prejudice;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff ordering defendant, GENERAL MOTORS CORPORATION, to pay legal interest on all amounts awarded herein from date of judicial demand until paid with the exception of those amounts awarded for weekly disability benefits for which legal interest is due from maturity of each weekly payment from its due date until paid; and,
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, GENERAL MOTORS CORPORATION, pay all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[*] Judge Patin, retired, participated in this decision as Judge Pro Tempore.
[1] Plaintiff filed a motion to dismiss LIGA's appeal however, this court has denied plaintiff's motion as it was not timely filed.