**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 9 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHEILA RENAE COSHATT, as
personal representative of the Estate of
Duston Price, deceased,

     Plaintiff-Appellant,

v.

CANADIAN VALLEY ELECTRIC
COOPERATIVE, INC.,

     Defendant-Appellee.

No. 01-7131
(E.D. Okla.)
(D.Ct. No. 01-CV-301-S)

---

**ORDER AND JUDGMENT**[*]

---

Joseph T. Acquaviva, Jr. (Tim D. Cain and Jeff C. Grotta on the briefs) of
Wilson, Cain & Acquaviva, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Richard D. Wagner (I. Michele Drummond with him on the brief) of Wagner,
Stuart & Cannon, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **KELLY,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

---

[*]  This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

In this diversity case, Ms. Renae Coshatt appeals a district court order dismissing her complaint against Canadian Valley Electric Cooperative for lack of subject matter jurisdiction. The district court determined Ms. Coshatt's exclusive remedy was under the Workers' Compensation Act of Oklahoma. *See* Okla. Stat. Ann. tit. 85, §§ 11, 12. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the district court did not err in dismissing Ms. Coshatt's complaint.

Canadian Valley Electric Cooperative provides electricity to customers in Oklahoma through overhead electric distribution lines. These lines require daily maintenance and repair. For the most part, Canadian Valley uses its own employees and equipment to perform the maintenance and repair work.

On one particular occasion, Canadian Valley hired Gordon Construction Company as an independent contractor to assist in repairing distribution lines following a severe ice storm. Due to the magnitude of the storm damage, Canadian Valley could not complete the work in the time required by Oklahoma law using only its own employees.[1] Tragically, an employee of Gordon

---

[1] Although Oklahoma law does not mandate a specific time limit within which an electric utility must restore service, it does require an electric utility to "make such efforts as are reasonable under the circumstances to minimize the adverse effects of disconnection of service" "[f]or the purpose of essential repair, maintenance or testing of utility equipment." Okla. Admin. Code § 165:35-21-30(2). Oklahoma law also requires

Construction, Dustin Price, sustained injuries and died while working on a distribution line.

The personal representative of Mr. Price's estate, Ms. Coshatt, brought suit against Canadian Valley in the United States District Court for the Eastern District of Oklahoma. She apparently claimed Canadian Valley negligently electrocuted Mr. Price when it energized the distribution line upon which he was working. Canadian Valley moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, challenging the facts upon which the district court's subject matter jurisdiction depended. The district court granted the motion and held it lacked subject matter jurisdiction over the action due to the exclusive remedy provisions of the Workers' Compensation Act of Oklahoma. Ms. Coshatt appeals.

We review de novo whether the district court properly dismissed a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). We review for clear error the district court's findings of jurisdictional facts. *See id.*

---

electric utilities to have a "written restoration of service policy/plan" with the objective of restoring service "as soon as possible." *Id.* § 165:35-19-4(2).

The Workers' Compensation Act of Oklahoma is the exclusive remedy for accidental injuries sustained during the course and scope of a worker's employment. *See* Okla. Stat. Ann. tit. 85, §§ 11, 12. *See also Harter Concrete Prod., Inc. v. Harris*, 592 P.2d 526, 528 (Okla. 1979); *Carroll v. District Court of the Fifteenth Judicial Dist.*, 579 P.2d 828, 830 (Okla. 1978). Claims arising under the Act must be brought in the Workers' Compensation Court of Oklahoma. *See* Okla. Stat. Ann. tit 85, §§ 26(B), 122. *See also State Ins. Fund v. Asarco, Inc.*, 782 P.2d 113, 114 (Okla. 1989); *Carroll*, 579 P.2d at 830. A principal hirer for whom an independent contractor is working is immune under the Act from tort liability for injuries sustained by the contractor's employees during the course of employment. *See* Okla. Stat. Ann. tit. 85, §§ 11, 12. *See also Izard v. United States*, 946 F.2d 1492, 1494 (10th Cir. 1991) (citing *Murphy v. Chickasha Mobile Homes, Inc.*, 611 P.2d 243, 244-45 (Okla. 1980)). In order to qualify as a principal hirer, the contract work performed by the independent contractor must be "necessary and integral" to the hirer's operations. *See Bradley v. Clark,* 804 P.2d 425, 427 (Okla. 1990); *Izard*, 946 F.2d at 1494 (citing *Murphy*, 611 P.2d at 244-45).

Work performed by an independent contractor is "necessary and integral" to a hirer's operations when it "(1) [is] directly associated with the day-to-day

activity carried on by the hirer's line of trade, industry or business or (2) would customarily be done in that line of business." *Murphy*, 611 P.2d at 248. "[A]s a sharp tool for implementing" this two-part standard, the Oklahoma Supreme Court in *Bradley v. Clark* adopted a "more restrictive" three-tier analysis from Louisiana case law. 804 P.2d at 427-28 (adopting the three-tier analysis set forth in *Berry v. Holston Well Serv., Inc.*, 488 So.2d 934, 937-38 (La. 1986)). Under the three-tier *Bradley* analysis, a court should inquire (1) whether the contract work is specialized or non-specialized; (2) if non-specialized, whether the contract work is a part of the hirer's trade, business, or occupation; and (3) whether the hirer was engaged in the same contract work as the contractor at the time of the injury. *See Bradley*, 804 P.2d at 428 n.10.

In a well-reasoned decision applying the three-tier *Bradley* analysis, the district court held Gordon Construction and Mr. Price were performing work necessary and integral to Canadian Valley's operations at the time of Mr. Price's injuries and death. In considering the first tier of the analysis, the district court concluded the contract work – repairing damaged electrical lines – was non-specialized because Canadian Valley "was not without the skill, knowledge, training or equipment to perform the task in question" and actually performed the work "on a daily basis." Under the second tier of the analysis, the district court

concluded the contract work was part of Canadian Valley's trade, business, or occupation because the work was regular and customary; Canadian Valley possessed the equipment necessary to perform the work; its employees had the skill and training necessary to perform the work; and its employees performed the work on a daily basis. Finally, the district court concluded the third tier of the *Bradley* analysis was satisfied. Canadian Valley employees were repairing damaged distribution lines at the time of Mr. Price's injuries and death. We see no error in the district court's conclusions. Under the circumstances of this case, we agree with the district court the contract work was necessary and integral to Canadian Valley's operations.

Ms. Coshatt argues the district court "improperly focused on the individual task being performed by Dustin Price." She believes the contract work "is properly characterized as nonrecurring, time-sensitive emergency repairs, *not* day-to-day line repair." The *Bradley* court noted "[n]onrecurring or extraordinary" repairs are usually not necessary and integral to a hirer's operations. *Bradley*, 804 P.2d at 428 n.10. In essence, Ms. Coshatt argues the contract work was nonrecurring and extraordinary because the ice storm was the "worst ... in 100 years" and caused damage "the magnitude of which likely will not be seen again." She acknowledged at oral argument, however, there is no case law to support this

argument.[2]  In any event, we disagree with her argument for two reasons.  First, we do not believe the severity of the ice storm or the amount of damage to the distribution lines significant under the facts of this case.  The ice storm did not change the type of work Canadian Valley customarily performed and hired Gordon Construction and Mr. Price to perform.  Second, Ms. Coshatt's factual assertions are not supported by the record.  The record indicates only the ice storm was "severe" and the amount of damage required Canadian Valley to hire Gordon Construction to help make timely repairs.  There is no evidence the severity of the ice storm or the amount of damage it caused was nonrecurring or extraordinary.  In fact, Ms. Coshatt conceded at oral argument ice storms damage electric distribution lines every year in Oklahoma.

---

[2] Ms. Coshatt does cite in her appellate brief various Louisiana appeals court cases in support of her argument, but all the cases are distinguishable on their facts.  In each of the cited cases, the hirers rarely, if ever, performed the contract work in question.  *See Richard v. Teague*, 636 So.2d 1160, 1171 (La. Ct. App. 1994); *Graves v. Lou Ana Foods, Inc.*, 604 So.2d 150, 158 (La. Ct. App. 1992); *Fountain v. Central Louisiana Elec. Co., Inc.*, 578 So.2d 236, 239 (La. Ct. App. 1991).  For example, a Louisiana appeals court concluded in *Fountain* the major conversion of a particular electric line was "nonrecurring" when it was done only about once every twenty years and the hirer had a policy of contracting out line conversions of such magnitude – 13.2 kilovolts to 34.5 kilovolts.  *Fountain*, 578 So.2d at 236, 239.  In contrast, Canadian Valley performed the contract work on a daily basis.  The ice storm changed only the amount of work, not the type of work, Canadian Valley employees normally performed.  The contract work itself was therefore not extraordinary or nonrecurring.

In a related argument, Ms. Coshatt claims the contract work cannot be necessary and integral to Canadian Valley's operations because it did not have enough manpower to complete the work in the time required by law. A court should consider as a factor in the second tier of the *Bradley* analysis whether the hirer has "the equipment and/or manpower capable of performing the contract work." *Bradley*, 804 P.2d at 428 n.10. This factor "focuses on determining whether the contract work, *as it relates to the hirer*, is ordinarily handled through employees." *Id*. Canadian Valley admits it did not have sufficient employees to complete the work in a timely manner but argues it ordinarily performs the contract work. It also argues its employees were capable of performing the contract work and were performing the same work as Gordon Construction and Mr. Price. We conclude Canadian Valley had manpower capable of performing the contract work. All the evidence indicates Canadian Valley normally used its own employees to maintain and repair electric distribution lines. Although Canadian Valley occasionally hired independent contractors like Gordon Construction to help make timely repairs, we cannot find any Oklahoma law indicating the use of independent contractors in such a manner renders otherwise necessary contract work unnecessary to the hirer's operations.[3]

---

[3] Ms. Coshatt again cites certain Louisiana appeals court cases in support of her argument, but, as discussed above, we believe the critical factor in each was the hirer's employees rarely, if ever, did the type of work in question. *See Richard*, 636 So.2d at

In sum, we conclude the district court correctly dismissed Ms. Coshatt's complaint for lack of subject matter jurisdiction. Gordon Construction and Mr. Price were performing work necessary and integral to Canadian Valley's operations at the time of Mr. Price's injuries and death. Canadian Valley was therefore a principal hirer and is liable to Mr. Price, if at all, only under the Workers' Compensation Act of Oklahoma in Workers' Compensation Court. The district court's order is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

1171; *DeWoody v. Citgo Petroleum Corp.*, 604 So.2d 92, 98 (La. Ct. App. 1992); *Fountain*, 578 So.2d at 239. This is consistent with the focus of the second tier of the *Bradley* analysis, which is to determine whether the contract work is ordinarily handled through the hirer's employees. *See Bradley*, 804 P.2d at 428 n.10; *DeWoody*, 604 So.2d at 98. Unlike the facts in the cases cited by Ms. Coshatt, Canadian Valley's employees performed the contract work on a daily basis. Canadian Valley only hired Gordon Construction to assist its own employees in order to complete the contract work in a timely manner.